**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **KARLA BRINTLEY,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) **Case No: 1:17-cv-1076** |
| v. | ) |
| | ) |
| **CASE CREDIT UNION,** a credit union, | ) |
| | ) |
| | ) |
| Defendant. | ) |

| | |
|---|---|
| Jennifer B. Salvatore (P66640) | Scott J. Ferrell, Esq. (*admission pending*) |
| Salvatore Prescott & Porter, PLLC | Pacific Trial Attorneys |
| Attorneys for Plaintiff | Attorneys for Plaintiff |
| 105 East Main Street | 4100 Newport Place Drive, Suite 800 |
| Northville, Michigan 48167 | Newport Beach, CA 92660 |
| Phone: (248) 679-8711 | Phone: (949) 706-6464 |
| Fax: (248) 773-7280 | Fax: (949) 706-6469 |
| salvatore@spplawyers.com | sferrell@pacifictrialattorneys.com |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, KARLA BRINTLEY, individually, by and through the undersigned counsel, Jennifer B. Salvatore and Scott J. Ferrell, Co-Counsel for Plaintiff, hereby files this Complaint against Defendant CASE CREDIT UNION for injunctive relief, damages, attorneys' fees, litigation expenses, and costs pursuant to the Americans With Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"), and the Michigan Persons with Disabilities Civil Rights Act, M.C.L. § 37.1301 *et seq.*, alleging as follows:

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, for Plaintiff's claims arising under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181 *et seq*. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's pendent claim under the Michigan Persons with Disabilities Civil Rights Act, M.C.L. § 37.1301 *et seq.*

2. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(1)-(3) because Defendant resides in this District, Defendant's principal place of business is in this District, a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District, and Defendant is subject to personal jurisdiction in this District.

**PARTIES**

3. Plaintiff KARLA BRINTLEY ("Plaintiff") is an adult resident of Michigan. Plaintiff is *sui juris,* is permanently blind and uses a screen reader in order to access the internet and read website content, and thus qualifies as an individual with disability as defined by the ADA, 42 U.S.C. § 12102(2), 28 C.F.R. 36.104. Despite several attempts to use and navigate Defendant's website, www.casecu.org, Plaintiff has been denied the full use and enjoyment of the facilities and services of casecu.org as a result of accessibility barriers on casecu.org. The access barriers on casecu.org have caused a denial of Plaintiff's full and equal access multiple times. Similarly, the access barriers on casecu.org have deterred Plaintiff from visiting Defendant's banking credit union locations.

4. Plaintiff is informed and believes, and thereon alleges, that Defendant CASE CREDIT

       UNION ("CCU") is a credit union with its principal place of business located in Lansing, Michigan, in this District. Plaintiff is informed and believes, and thereon alleges, that CCU owns and operates credit union locations in Michigan. The credit union locations constitute places of public accommodation. CCU's location provides to the public important goods and/or services. CCU also provides to the public the casecu.org website. Casecu.org provides access to CCU's array of services, including a locator for the CCU facilities, information that enables a person without an account to learn what services CCU has to offer potential customers including descriptions of its amenities and services that enable a user to obtain general information about particular topics and specific information about what CCU offers, and many other benefits related to these facilities and services. The CCU locations are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Casecu.org is a service, privilege, advantage, and accommodation of the CCU facilities. Casecu.org is a service, privilege, advantage, and accommodation that is heavily integrated with these locations.

5. At all times relevant to the Complaint, CCU was acting through its agents, servants and/or employees.

## FACTUAL BACKGROUND

### Applicability of the ADA to Commercial Websites

6. The Internet has become a significant source of information, a portal and tool for conducting business, and a means for doing everyday activities such as shopping, banking, etc. for both the sighted and blind, and/or visually-impaired persons.

7. Blind individuals may access websites by using keyboards in conjunction with screen-

   reading software that vocalizes visual information on a computer screen. Screen access software provides the only method by which a blind person may independently access the internet. Unless websites are designed to be read by screen reading software, blind persons are unable to fully access websites and the information, products and services contained thereon.

8.  The international website standards organization, W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually-impaired people. These guidelines are successfully followed by numerous large business entities to ensure their websites are accessible. These guidelines recommend several basic components for making websites accessible including, but not limited to: adding invisible alternative text to graphics; ensuring that all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible; and adding headings so that blind people can easily navigate websites. Without these very basic components, a website will be inaccessible to a blind or visually-impaired person using a screen reader.

9.  Within this context, numerous federal courts have recognized the viability of ADA claims against commercial website owners/operators with regard to the accessibility of such websites. *See, e.g.*, *Andrews v. Blick Art Materials, LLC*, -- F. Supp. 3d --, 2017 WL 3278898, at *12, *15-*18 (E.D.N.Y. Aug. 1, 2017) (Weinstein, J.); *Thurston v. Chino Commercial Bank, N.A.*, No. CV 17-01078 BRO (JCx), 2017 WL 3224681, at *5 (C.D. Cal. July 27, 2017) (citing *Gorecki*); *Markett v. Five Guys Enterprises LLC*, No. 1:17-cv-00788-KBF, slip op. at 4-6 [ECF #33] (S.D.N.Y. July 21, 2017); *Gorecki v.*

*Hobby Lobby Stores, Inc.*, No. 2:17-cv-01131-JFW-SK, 2017 WL 2957736 (C.D. Cal. June 15, 2017) (Walter, J.) (denying a motion to dismiss sought against ADA and California's Unruh Civil Rights Act claims) ("[T]his is a relatively straightforward claim that Hobby Lobby failed to provide disabled individuals full and equal enjoyment of goods and services . . . by not maintaining a fully accessible website.  There is nothing unique about this case, as federal courts have resolved effective communication claims under the ADA in a wide variety of contexts-- including cases involving allegations of unequal access to goods, benefits and services provided through websites."); *Gil v. Winn-Dixie Stores, Inc.*, No. 16-23020-Civ-Scola, -- F. Supp. 3d --, 2017 WL 2547242, at *7 (S.D. Fla. June 13, 2017) (finding that the defendant, a large supermarket chain, had violated the plaintiff's rights under the ADA by failing to maintain an accessible website after a non-jury trial); *Frazier v. Ameriserv Financial Bank*, Nos. 2:16-cv-01898-AJS (Lead Case), 17cv0031 [ECF #107], slip op. at 20 (W.D. Pa. Apr. 21, 2017) (denying a motion to dismiss an ADA claim alleging an inaccessible commercial website); *Frazier v. Churchill Downs Inc.*, Nos. 2:16-cv-01898-AJS (Lead Case), 2:16-cv-0007 (Member Case) [ECF #107] slip op. at 20 (W.D. Pa. Apr. 21, 2017) (same); *OmahaSteaks.com, Inc. v. Access Now, Inc., et al.*, No. 8:17-cv-00060-LSC-CRZ [ECF #9-1] (D. Neb. Apr. 17, 2017) (consent decree); *Access Now, Inc., et al. v. Omahasteaks.com, Inc.*, Nos. 2:16-cv-01898-AJS (Lead Case), 2:17-cv-00269-AJS (Member Case) [ECF #99] (W.D. Pa. Apr. 11, 2017 (same); *Gil v. Winn-Dixie Stores, Inc.*, -- F. Supp. 3d --, No. 16-23020-Civ-Scola, 2017 WL 2609330 (S.D. Fla. Mar. 15, 2017) (denying a motion for judgment on the pleadings sought against an ADA claim

5

alleging an inaccessible commercial website); *Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case 3:15-cv-30023-MGM, 2016 WL 3561622, at *12-*20 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.) (recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case 3:15-cv-30023-MGM, 2016 WL 6540446, at *1-*3 (D. Mass. Nov. 3, 2016) (Mastroianni, J.); *Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, Case 3:15- cv-30024-MGM, 2016 WL 3561631, at *1 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.)(recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, Case 3:15-cv-30024-MGM, 2016 WL 6652471, at *1 (D. Mass. Nov. 4, 2016) (Mastroianni, J.); *Edward Davis v. Orlando Wilshire Investments Ltd., et al.*, No. 5:15-cv-01738-MWF-KK, slip op. at 10 [ECF #17] (C.D. Cal. Nov. 2, 2015) (Fitzgerald, J.) (denying motion to dismiss in a website accessibility case) ("the Court concludes that the Complaint sufficiently alleges that the inaccessibility of the Website impedes the full and equal enjoyment of the Hotel."); *Nat'l Fed'n of the Blind v. Scribd, Inc.,* 98 F. Supp.3d 565, 576 (D. Vt. 2015) (denying a motion to dismiss an ADA claim against a commercial website operator); *James Patrick Brown v. BPS Direct, LLC, et al.*, Case No. LACV 14-04622 JAK (JEMx) slip op. at 4-7 [ECF #30] (C.D. Cal. Oct. 6, 2014) (Krondstadt, J.) (denying the defendant's motion to dismiss while relying on the *Target* decision as "persuasive", and holding "the Complaint does allege that Bass Pro Shops is a chain of brick-and-mortar stores and that BassPro.com is a website providing information about Bass Pro Shops products, offers, and locations…. [and that] a nexus

could be established here through discovery."); *Penney v. Kohl's Dep't Stores, Inc., et al.*, No. 8:14-cv-01100-CJC-DFM [ECF #12] slip op. at 3 (C.D. Cal. Sept. 23, 2014) (Carney, J.) (denying a motion to dismiss and stating, "Thus, the Complaint states plausible facts that establish the requisite nexus between the challenged service and the place of public accommodation."); *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (excluding web-based services would "run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public"); *id.* at 200-01 ("[T]he legislative history of the ADA makes clear that Congress intended the ADA to adapt to changes in technology.") (quoting H.R. Rep. 101-485(II), at 108 (1990)) ("[T]he Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times."); *Shields v. Walt Disney Parks and Resorts US, Inc.*, 279 F.R.D. 529, 559 (C.D. Cal. 2011) (rejecting as "unpersuasive" Disney's argument that "there is no accepted accessibility standard" and the argument that the DOJ has yet to determine what standards to apply to websites and stating, "The lack of a widely accepted standard for website accessibility does not preclude injunctive relief that would improve access to Defendants' websites by the visually impaired."); *Nat'l Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) ("To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute."); *id.* at 953-54

7

("consistent with the plain language of the statute, no court has held that under the nexus theory a plaintiff has a cognizable claim only if the challenged service prevents physical access to a public accommodation. Further, it is clear that the purpose of the statute is broader than mere physical access—seeking to bar actions or omissions which impair a disabled person's "full enjoyment" of services or goods of a covered accommodation. 42 U.S.C. § 12182(a). Indeed, the statute expressly states that the denial of equal "participation" or the provision of "separate benefit[s]" are actionable under Title III. *See* 42 U.S.C. § 12182(b)(1)(A)."); *cf. Hindel v. Husted*, No. 2017 WL 432839, at *7 (S.D. Ohio Feb. 1, 2017) (granting a motion for preliminary injunction against the Ohio Secretary of State based on the accessibility of the state's website under Title II of the ADA and requiring conformance with WCAG 2.0 Level A and AA Success Criteria).

### The Inaccessibility of CCU's Website to the Visually-Impaired

10. CCU offers the commercial website, casecu.org, which provides, among other things, information concerning the CCU locations it operates, information and descriptions of its amenities and services, privileges, advantages, and accommodations, and allows users to find the locations for them to visit.

11. Based on information and belief, it is CCU's policy and practice to deny blind users, including Plaintiff, equal enjoyment of and access to casecu.org. Due to CCU's failure and refusal to remove access barriers on casecu.org, Plaintiff and other blind and visually impaired individuals have been denied equal enjoyment of and access to the CCU locations and to the other services, advantages, privileges, and accommodations offered to the public through casecu.org.

12. CCU denies blind individuals equal enjoyment of and access to the services, privileges, advantages, and accommodations and information made available through casecu.org by preventing them from freely navigating casecu.org. Casecu.org contains access barriers that prevented free and full use by blind persons using screen reading software.

13. Casecu.org's barriers are pervasive and include, but are not limited to, the following: (1) the lack of Alternative Text, or a text equivalent. Alternative Text is invisible code embedded beneath a graphical image on a website. Web accessibility requires that Alternative Text be coded with each picture so that a screen reader can speak the Alternative Text where a sighted user sees pictures. Alternative Text does not change the visual presentation, but instead a text box will pop-up when the mouse moves over the picture. The lack of Alternative Text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. As a result, visually-impaired Case Credit Union customers are unable to determine what is on the website, browse the site, look for the Case Credit Union locations, check out Defendant's services, and/or determine which location to visit; (2) Empty links or buttons that contain no text causing the function or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and screen reader users; and (3) Missing form labels which presents a problem because if a form control does not have a properly associated text label, the function or purpose of that form control may not be presented to screen reader users. Form labels also provide visible descriptions and larger clickable targets for form controls.

14. Due to the inaccessibility of casecu.org, blind and otherwise visually impaired

       customers who use screen readers are hindered from effectively browsing for CCU's locations, amenities and services, privileges, advantages, and accommodations that exist online unlike sighted users. If casecu.org were accessible, Plaintiff could independently and privately investigate CCU's services, privileges, advantages, and accommodations and amenities, and find the locations to visit via CCU's website as sighted individuals can and do.

15. Despite several attempts to use casecu.org in recent months, the numerous access barriers contained on CCU's website have denied Plaintiff's full and equal access, and deterred Plaintiff on a regular basis from accessing CCU's website. Similarly, based on the numerous access barriers contained on casecu.org, Plaintiff has been deterred from visiting CCU's physical location that Plaintiff may have located by using casecu.org.

## COUNT I

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

16. Plaintiff incorporates by this reference the allegations contained in paragraphs 1-15 as if fully rewritten here.

17. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

18. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices,

10

or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations"; and "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden". 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii). "A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense." 28 C.F.R. § 36.303(a). In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

19. CCU's locations are "public accommodations" within the meaning of 42 U.S.C. § 12181 *et seq.* CCU generates millions of dollars in revenue from the sale of its amenities and

services, privileges, advantages, and accommodations in Michigan through its locations and related services, privileges, advantages, and accommodations and casecu.org. Casecu.org is a service, privilege, advantage, and accommodation provided by CCU that is inaccessible to patrons who are visually-impaired like Plaintiff. This inaccessibility denies visually-impaired patrons full and equal enjoyment of and access to the facilities and services, privileges, advantages, and accommodations that CCU made available to the non-disabled public. CCU is violating the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, in that CCU denies visually-impaired customers the services, privileges, advantages, and accommodations provided by casecu.org. These violations are ongoing.

20. CCU's actions constitute intentional discrimination against Plaintiff on the basis of a disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* in that: CCU has constructed a website that is inaccessible to Plaintiff; maintains the website in this inaccessible form; and has failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

21. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests for preliminary and permanent injunctive relief whereby casecu.org is modified and revised so as to be accessible to the visually-impaired, further equitable relief, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

## COUNT II

## VIOLATION OF MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, M.C.L. § 37.1301, *et seq.*

22. Plaintiff incorporates by this reference the allegations contained in paragraphs 1-21 as if fully rewritten here.

23. CCU operates "places of public accommodation" pursuant to M.C.L. § 37.1301(a).

24. CCU has committed, and continues to commit, an unlawful act pursuant to M.C.L. § 37.1302(a) by denying Plaintiff the full enjoyment of its goods, services, accommodations, advantages, facilities, or privileges by constructing a website that is inaccessible to Plaintiff; maintaining the website in this inaccessible form; and failing to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

25. Pursuant to M.C.L. § 37.1606, Plaintiff is entitled to compensatory and punitive damages, and attorneys' fees and costs, in an amount to be determined at trial, but in any event not less than $25,000.00, as well as issuance of an injunction requiring Defendant to modify and revise casecu.org so as to be accessible to the visually-impaired.

WHEREFORE, Plaintiff prays for judgment against Defendant CASE CREDIT UNION as follows:

For **COUNT I,** an injunction requiring CCU to make all readily achievable alterations and modifications to its website, casecu.org, to allow full and equal enjoyment of the goods, services, facilities, privileges and advantages offered by the website to persons

who are visually-impaired, and the reasonable attorneys' fees and costs of maintaining this action; and

For **COUNT II,** compensatory and exemplary damages, attorneys' fees and costs, in an amount to be determined at trial, but in any event not less than $25,000.00, as well as issuance of an injunction requiring CCU to make all readily achievable alterations and modifications to its website, casecu.org, to allow full and equal enjoyment of the goods, services, facilities, privileges and advantages offered by the website to persons who are visually-impaired.

                                              Respectfully submitted,

Date: December 8, 2017                        /s/ Jennifer B. Salvatore
                                                Jennifer B. Salvatore, Esq. (P66640)
                                                Salvatore Prescott & Porter, PLLC
                                                Attorneys for Plaintiff
                                                105 East Main Street
                                                Northville, Michigan 48167
                                                Phone: (248) 679-8711
                                                Fax: (248) 773-7280
                                                salvatore@spplawyers.com


                                                /s/ Scott J. Ferrell
                                                Scott J. Ferrell, Esq. (*admission pending*)
                                                Pacific Trial Attorneys
                                                Attorneys for Plaintiff
                                                4100 Newport Place Drive, Suite 800
                                                Newport Beach, CA 92660
                                                Phone: (949) 706-6464
                                                Fax: (949) 706-6469
                                                sferrell@pacifictrialattorneys.com

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all claims and causes of action so triable in this lawsuit.

Respectfully submitted,

Date:  December 8, 2017

/s/ Jennifer B. Salvatore
Jennifer B. Salvatore, Esq. (P66640)
Salvatore Prescott & Porter, PLLC
Attorneys for Plaintiff
105 East Main Street
Northville, Michigan 48167
Phone: (248) 679-8711
Fax: (248) 773-7280
salvatore@spplawyers.com

/s/ Scott J. Ferrell
Scott J. Ferrell, Esq. (*admission pending*)
Pacific Trial Attorneys
Attorneys for Plaintiff
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660
Phone: (949) 706-6464
Fax: (949) 706-6469
sferrell@pacifictrialattorneys.com